## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 31 2017, 10:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeremiah Roberts,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 31, 2017

Court of Appeals Case No.
49A05-1702-CR-289

Appeal from the Marion Superior Court

The Honorable Marc T. Rothenberg, Judge

Trial Court Cause No.
49G02-1401-MR-2947

**Pyle, Judge.**

# Statement of the Case

[1] Jeremiah Roberts ("Roberts") appeals his conviction by jury of murder.[1] He argues that the evidence is insufficient to support his conviction because the State failed to prove his identity beyond a reasonable doubt. Concluding that the evidence is sufficient, we affirm his conviction.

[2] We affirm.

# Issue

The sole issue for our review is whether there is sufficient evidence to support Roberts' conviction.

# Facts

[3] The facts most favorable to the verdict reveal that in January 2014, the owner of a dog rescue shelter in Indianapolis allowed Roberts, Derek Romano ("Romano"), and their two dogs to stay in a pole barn on the shelter's property. Because Roberts and Romano were homeless and jobless, the shelter's owner, Jennifer Fodera ("Fodera") allowed the men to take care of the shelter dogs and to do odd jobs in exchange for the room.

[4] On January 18, Roberts ordered a pizza for the sole purpose of robbing the delivery driver. When the driver, John Sullivan ("Sullivan"), arrived at the shelter, Roberts attacked him with a hammer in the front entry of the shelter,

---

[1] IND. CODE § 35-42-1-1.

duct-taped his hands behind his back, and dragged his body to the basement. After attempting to clean up Sullivan's blood in the entry and office areas, Roberts and Romano stole Sullivan's car and drove west.

[5] When Fodera and a helper arrived at the shelter the following morning, they noticed blood in the office and on the basement door. Fodera also noticed a hammer that was usually kept in the pole barn and bleach that was usually kept under the sink. As Fodera walked down the stairs to the basement, she noticed blood and possible drag marks. She discovered Sullivan's body behind a furnace in the basement. His hands were secured with duct tape, and his body was covered in plastic that was also secured with duct tape. He wore an empty gun holster.

[6] Roberts and Romano were subsequently arrested in Wyoming after they abandoned Sullivan's car. Police officers found Sullivan's gun in Roberts' backpack. During his initial interview with the Wyoming police officers, Roberts denied that he had ever been in Indiana. Roberts later told the officers that Sullivan had confronted him with a gun so Roberts had tied him up and had placed him in the basement.

[7] Roberts subsequently admitted robbing Sullivan but denied killing him. Specifically, Roberts explained as follows:

> We ordered a pizza. Fucking robbed him, tied him up, put him in the basement. We ain't killed nobody . . . I don't know he must have fell down the stairs or something. I don't know what

happened to him, but we just took him and put him in the basement and we left and we drove down here.

(Ex. 22 at 30).

[8] Roberts was charged in Indiana with robbery and murder. Testimony at Roberts' jury trial revealed that Sullivan's cause of death was multiple blunt force traumatic injuries to the head. These injuries were consistent with having been caused by a hammer. Sullivan, who was bound with duct tape, also suffered from scrapes and bruising to his chest that were consistent with his body having been dragged. Sullivan's DNA, which was based on blood evidence, was found inside the front door, on the front entry landing, along a pathway from the front door to the basement, and on the basement door.

[9] Testimony at trial also revealed that Roberts' DNA was found on the out-of-place hammer's handle and on the sticky side of a roll of duct tape in the office. Roberts' hand print was found on the bleach bottle.

[10] At trial, Roberts testified that Romano had initiated the robbery and had fought with Sullivan over Sullivan's gun. Roberts testified that he had intervened to help Romano, and the two men then walked Sullivan to the basement and told him to stay there until they were gone. He further testified that they drove off in Sullivan's car, but Romano had insisted that they return to the house for his phone. According to Roberts, he waited in the car while Romano went inside for five to ten minutes and that they then drove to Wyoming in Sullivan's car.

The jury convicted Roberts of robbery and murder. He now appeals the murder conviction.

## Decision

Roberts argues that there is insufficient evidence to support his murder conviction because the State failed to prove his identity as the perpetrator of the murder beyond a reasonable doubt. Our standard of review for sufficiency of the evidence claims is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not reweigh the evidence or judge witness credibility. *Id.* We will affirm the conviction unless no reasonable fact finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* The evidence is sufficient if an inference may be reasonably drawn from it to support the verdict. *Id.* at 147.

Roberts specifically argues that his "mere presence [at the crime scene] and the circumstantial evidence were insufficient to convict him [of murder]." (Roberts' Br. 11). However, we agree with the State that "ample circumstantial evidence supported the jury's conclusion that [Roberts] was the individual who committed Sullivan's murder." (State's Br. 12).

Specifically, our review of the evidence reveals that Roberts admitted robbing Sullivan and walking him to the basement but denied killing him. However, Sullivan's blood and DNA were found inside the front door, on the front entry landing, along a pathway from the front door to the basement, and on the

basement door. He was found dead in the basement. His hands were bound with duct tape, and he was covered in plastic wrap that was also secured with duct tape. Sullivan's death was caused by blunt force traumatic injuries to his head that were consistent with being struck with a hammer. Sullivan also had injuries consistent with having been dragged down the stairs to the basement. Roberts' DNA was found on a hammer and a bottle of bleach. His DNA was also found on the sticky side of a roll of duct tape. This evidence, which supports a reasonable inference that Roberts murdered Sullivan, is sufficient to support Roberts' murder conviction. *See Drane*, 867 N.E.2d at 147.

Roberts' arguments that he "used supplies and tools to tend to the rescue dogs" and that Sullivan "was standing and cussing when [Roberts] headed west" are nothing more than requests that we reweigh the evidence. (Roberts' Br. at 10, 14). This we cannot do. *See id*. at 146. There is sufficient evidence to support Roberts' conviction.

Affirmed.

Riley, J., and Robb, J., concur.